*Ross v. Drake, 37 Pa., 373.*

## Robinson's Estate.

*Husband and wife — Marriage —Contracts — Antenuptial contract—Fraud.*

Antenuptial contracts are not inherently fraudulent nor is there any such presumption. They require good faith, but fraud is not presumed in them any more than in other cases. There must be some evidence of gross disproportion or other fact from which fraud may be inferred before the onus changes.

*Evidence—Husband and wife—Witness—Competency of witness— Widow—Antenuptial contract.*

A wife after the death of her husband is incompetent to testify that in signing an antenuptial contract she supposed that she was signing another and a different contract which had been previously shown to her.

Argued March 27, 1908.    Appeal, No. 78, Jan. T., 1908, by Helen C. Robinson, from decree of O. C. Phila. Co., July T., 1906, No. 287, dismissing exceptions to adjudication in Estate of Joseph B. Robinson, deceased.    Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.    Affirmed.

Exceptions to adjudication.

From the record it appeared that on October 2, 1902, Joseph B. Robinson was married to Helen M. Clawson.    Prior to the marriage an antenuptial contract had been executed and acknowledged by the parties under which Mrs. Robinson was to receive $25,000 in consideration of her releasing all claims of dower and other rights in her husband's estate.    The sum of $25,000 was subsequently paid to her.    There was evidence that the decedent had told his wife that he was worth $100,000, but as a matter of fact he was worth about $150,000. The auditing judge, LAMORELLE, J., refused to consider the testimony of the widow, to the effect that she had signed the paper in question under the belief that it was another and a different contract previously read to her.    The auditing judge refused the widow's claim to participate in the estate.

Exceptions to the adjudication were dismissed by the court.

*Error assigned* was in dismissing exceptions to adjudication.

*J. Quincy Hunsicker,* with him *John H. Schwacke* and *J. Quincy Hunsicker, Jr.,* for appellant.—In all cases of contracts between parties sustaining confidential relations affirmative proof is necessary on the part of the beneficiary.    The burden is upon those claiming under the contract to prove affirmatively that no advantage was taken of the confidential relation ; that the contract was fair, adequate and equitable; that the contract was executed with a full knowledge of its provisions and their legal effect, and there must be the clearest

proof of uberrima fides : Greenfield's Estate, 14 Pa. 489 ; Wistar's App., 54 Pa. 60 ; Kline's Est., 64 Pa. 122 ; Darlington's App., 86 Pa. 512 ; Miskey's App., 107 Pa. 611 ; Shea's App., 121 Pa. 302 ; Plankinton's Estate, 212 Pa. 235.

*John G. Johnson*, with him *Walter E. Rex*, for appellee.— The testimony of the widow was not admissible to contradict her antenuptial contract : Hunt's App., 100 Pa. 590 ; DeSilver's Est., 32 Pa. Superior Ct. 174.

There was an absence of proof of inadequacy of consideration, such as raised a presumption that the antenuptial contract was fraudulent : Shea's App., 121 Pa. 302 ; Kline's Est., 64 Pa. 122 ; Tiernan v. Binns, 92 Pa. 248 ; Bierer's App., 92 Pa. 265 ; Smith's App., 115 Pa. 319 ; Neely's App., 124 Pa. 406 ; Ludwig's App., 101 Pa. 535 ; Warner's Est., 210 Pa. 431 ; Birkbeck's Est., 215 Pa. 323 ; Kesler's Est., 143 Pa. 386.

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 23, 1908 :

Antenuptial contracts are not inherently fraudulent nor is there any such presumption. They require good faith, but fraud is not presumed in them any more than in other cases. There must be some evidence of gross disproportion or other fact from which fraud may be inferred before the onus changes. As said by the learned judge below : " The sum given in the present case was an outright gift ; the wife took no chance ; she was provided for in any and every event ; whether her husband died rich or poor, whether he or she survived, was to her, so far as her temporal welfare was concerned, a matter of no moment. A woman about to be married might readily accept outright a sum equal to one-sixth of her husband's estate, and at the same time be willing to accede to a proposition that she would relinquish at the time of his death that which the law would give her and which by right she should have and get."

The widow was clearly not a competent witness. As said by the learned judge below : " The contract did not prove itself ; two witnesses were called who identified the signatures of Joseph B. Robinson and of Helen M. Clawson ; without this identification, the contract was not in evidence ; the widow was then called, and her testimony was in effect a contradiction of the testimony of the two preceding witnesses ; true, she did not

deny her signature, but she did deny that in placing her signature to the paper in question, she intelligently signed the contract. In brief, her testimony was that Mr. Robinson had promised her the sum of $25,000 as a gift, telling her he was worth $100,000; had never explained to her that she was to renounce any legal rights as to dower, etc., and that the agreement he originally showed her was not as long as the one she was given to sign, in fact, was on one sheet of paper, and that, when she did sign, she did so upon the supposition that it was the previous contract rewritten, and not a new and a different one." But even if she had been competent she was claiming against her husband's estate in contradiction of her formal written agreement of which a duplicate had been in her possession for several years. The testimony was entirely inadequate for such purpose.

Judgment affirmed